THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DALE A. MATYCHOWIAK, Defendant-Appellant.

(No. 73-341;

Fifth District—April 19, 1974.

EBERSPACHER, J., dissenting.

Robert E. Farrell, Deputy Defender, and Robert E. Davison, Legal Director, both of Mt. Vernon, for appellant.

Robert H. Rice, State's Attorney, of Belleville, for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

Appellant was convicted of burglary in St. Clair County upon his plea of guilty. Pursuant to plea negotiations, appellant was sentenced to a term of from 2½ to 7½ years. The appeal here is based solely on appellant's claim that the trial court did not comply with section 5—8—1(c) (3) of the Unified Code of Corrections (Ill. Rev. Stat., ch. 38, sec. 1005—8—1(c)(3)), which provides that one convicted of a Class 2 felony (burglary is such: ch. 38, par. 19—1(b)) shall be sentenced to a minimum term of 1 year "unless the court, having regard to the nature and circumstances of the offense and the history and character of the defendant, sets a higher minimum term, * * *." The record includes nothing which could properly advise the court of these factors. Included in the record is a psychiatric report, with some background material about the defendant and, of course, information about the offense is contained in the plea proceedings. However, it appears that the sentence was absolutely based upon the plea agreement. The trial court stated to the defendant that he could accept the plea conditionally pending receipt of evidence in aggravation and mitigation, but also informed him that he would not do this; instead he would accept the plea outright.

The present case, however, presents a novel point. In some cases, the original sentence was imposed before January 1, 1973, the effective date of the Corrections Code. In the instant case, the 2½-year minimum was part of the agreement concluded between appellant and the State. All of this and the acceptance of the guilty plea occurred after the enactment of the Code. It is evident that the parties had the Code in mind, unless the 1 to 3 ratio of the minimum and maximum sentences is coincidental. A direct conflict arises between the Code and the binding nature of plea bargains freely entered into.

The Supreme Court of the United States has recently discussed the importance of plea negotiations in *Santobello v. New York*, 404 U.S. 257, 30 L.E.2d 427, 92 S.Ct. 485. In the opinion by Chief Justice Burger, the Court expressed in *dicta* its continuing approval of proper plea negotiations and stressed that, since plea negotiations were binding upon the parties, they must be entered into fairly with equality on both sides. In Illinois, before the enactment of the Code, the Third Appellate District held a defendant bound to the sentence fairly agreed to by both parties. The court emphasized that under Rule 615(b) sentences are reviewable,

but the court specifically refused to review plea agreement properly concluded. In *People v. Earl*, 14 Ill.App.3d 617, the same court reviewed a sentence of 6 to 14 years for armed robbery, the result of plea negotiations entered into prior to January, 1973. Because of the new Code, the defendant appealed. The court held that, since armed robbery is a Class 1 felony requiring a 4-year minimum, the 6-year minimum would stand. No mention was made of the requirement which is the question in the instant case. Thus, the case appears to support the stand for the superiority of plea agreements.

■■ To allow plea agreement to take precedence over the statutory scheme seems to weaken the attempt to standardize sentences. Furthermore, while it is clear that it is the judge who imposes a sentence, the presence of a plea negotiation must certainly be influential. Other parts of the Code can be waived by the defendant. Section 5—3—1 made presentence reports mandatory, but a further part of that section allows waiver when "knowingly" made. Section 5—4—1 makes a sentencing hearing mandatory. It was clear that a defendant could waive such a hearing under the previous law (ch. 38, sec. 1—7(g)) both expressly and by failure to request it. (*People v. McNeil*, 123 Ill.App.2d 285.) This section was known as a "Hearing in Mitigation and Aggravation" which could be separate and apart. At the present time this type of hearing is included as part of section 5—4—1, the sentencing hearing. Under the Code, such a hearing is required even if the defendant does not request it (section 5—4—1, Commentary). Sentences cannot be imposed in the absence of knowledge of the character and history of the defendant.

■■ Section 5—4—1 must be construed in light of the requirements of Section 5—8—1(c)(3), as there is a manifest logic to such a construction. The Council Commentary explaining the purpose and intent of section 5—8—1(c)(3) supports this view:

> "The Judge is required to take regard of the nature and circumstances of the offense and the history and character of the defendant before setting a minimum term above the norms established by the Legislature in the statute   *   *   *."

The Illinois Unified Code of Corrections deems the sentence hearing mandatory. Section 5—4—1 states what the trial court *shall* do, not what the trial court may do. Likewise, the minimum term of 1 year for a Class 2 felony is mandated under section 5—8—1(c)(3), unless the court sets a higher minimum term after having considered the nature and circumstances of the offense and the history and character of the defendant. Nowhere in the Code is there an indication that a negotiated plea ipso facto can waive the requirements expressed by sections 5—4—1 and 5—

8—1(c)(3). It cannot be assumed that because the trial court set a higher minimum, it did consider the nature and circumstances of the offense and the history and character of the defendant. There must be a positive showing.

It is quite clear that a defendant cannot successfully enter into a negotiated plea pursuant to which he is sentenced to a minimum term in excess of one-third of the maximum term imposed. If, indeed, a negotiated plea can "waive" the trial court's statutory duty of inquiry, it would seem that the negotiated plea could wave the one-third rule with just as much logic.

It is also evident that prosecutors must have some leeway in plea negotiations. The A.B.A. standards for pleas of guilty clearly accept recommendations of sentence modification or leniency as effective and proper negotiating tools (A.B.A. Standards 3.1(b)). This freedom is not without limits, however, and the primary one is that sentences are to be imposed by the court. The defendant must be so advised (Rule 402(a)), and the court must keep strict control over the procedures. But, if the unconscious effect of the enactment of the Corrections Code is to set 1 year (4 years for Class 1 felonies) in most plea negotiations as a minimum sentence, an important prosecutorial tool may be compromised. Likewise, strangely enough, it weakens plea agreements when the agreement lasts only as long as it takes the defendant to get to the appellate court.

The Code greatly affects sentences, and a defendant with a good background might be less likely to accept blindly a prosecutor's recommendation if he knows that he might get a minimum sentence based on his record. On the other hand, a defendant with a poor background should know that a minimum sentence, 1 year in most cases, is not possible because of his record. However, the court may accept the result of the plea bargaining entered into by the State and the defendant. But, the court must be certain that the negotiations were entered into fairly with evenness on both sides, and this can only be done by conducting the sentencing hearing according to the statutes after the guilt has been determined. The trial court in this case made certain that the defendant was aware of the minimum term involved, but the defendant was not adequately informed that the court might impose more than the minimum because of the negotiated plea. In imposing more than the minimum, the court must tell the defendant that this is done because of "the nature and circumstances of the offense and the history and character of the defendant".

■■ The judgment of the Circuit Court of St. Clair County is affirmed, but the sentence imposed is vacated and the cause is remanded to the said court with directions that a sentencing hearing be held to determine

if the defendant should receive more than the minimum term set by statute.

Judgment of conviction affirmed, the sentence vacated and cause remanded with directions.

G. MORAN, P. J. concurs.

Mr. JUSTICE EBERSPACHER, dissenting:

I am of the opinion that we have properly disposed of this issue in *People v. Edwards*, 18 Ill.App.3d 379.

Supreme Court Rule 402, which recognizes and embraces negotiated pleas in the present form, became effective as of September 17, 1970. A previous version of the Rule had likewise recognized and embraced negotiated pleas. As are all Supreme Court Rules, it is a pronouncement of the applicable law in the case.

The Unified Code of Corrections is a legislative enactment made more than 2 years after the first version of Supreme Court Rule 402 recognizing and embracing negotiated pleas. It makes no specific reference to negotiated pleas, therefore whatever applicability the Code has to negotiated pleas must be implied from its general language, and if it modifies Rule 402 it must do so by implication.

I would point to the language of section 5—4—1(a) of the Code to call attention that it is applicable only, "after a *determination* of guilt" (Emphasis supplied). In a negotiated plea situation the defendant *confesses* guilt, and his guilt is *not determined* by the court. Further examination of that section leads me to conclude that its drafters did not have a negotiated plea situation in mind, and as a result I would not consider section 5—4—1(a) applicable to a situation in which the court had accepted the negotiated plea.

In a negotiated plea situation, a defendant confesses his guilt in reliance on what the defendant considers as concessions to him, being either fulfilled or promised by the State. It is he who has voluntarily considered the nature and circumstances of the offense and the history and character of the defendant, and exercised his choice to avoid standing trial and to avoid having those factors considered by some one else in the determination of the sentence. In cases in which the defendant agrees by negotiation to a higher minimum than should be imposed if the nature and circumstances of the offense and his history and character does not warrant a greater minimum than is provided under section 5—8—1(c)(3), it is quite obvious that defendant has chosen to confess with the hope of the trial court accepting his plea with a minimum of consideration of those factors. I do not agree that in such a negotiated

744

plea situation the trial court must, in imposing more than the minimum, tell the defendant that this is done because of the nature and circumstances of the offense and the history and character of the defendant, when in fact the defendant has considered those things and concluded that it would be beneficial to him to accept more than the minimum in view of the nature and circumstances and his background.

A defendant who negotiates a plea realizes that a court can impose more than the bare minimum provided by the Code, or he would not negotiate a greater minimum than is therein provided.

As a result I would affirm.